UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00070-GNS-HBB

JOHN WESLEY NEWELL                                                                PLAINTIFF

v.

SOUTHERN HEALTH PARTNERS, INC. et al.                                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 56) and Defendants' Motion to Exclude Expert Testimony (DN 57). The motions are ripe for adjudication. For the following reasons, the motion for summary judgment is **GRANTED**, and the motion to exclude is **DENIED AS MOOT**.

I. STATEMENT OF FACTS

During the time period relevant to this matter, Plaintiff John Wesley Newell ("Newell") was a prisoner incarcerated at the Warren County Regional Jail ("WCRJ"). (Compl. ¶ 3, DN 1). Defendant Southern Health Partners, Inc. ("SHP") contracts with the WCRJ to provide medical care to inmates housed in that facility. (Compl. ¶ 6). Defendants Ronald Waldridge, MD, Barry Dority, APRN, and nurses Sandra Hodge, Lesa Watts ("Watts"), and Talana Lasley ("Lasley") are employed by SHP. (Compl. ¶ 6).

On July 7, 2014, Newell was booked into the WCRJ. During the booking process, Newell denied having any medical conditions or taking any prescription medications. (Defs.' Mot. Summ.

J. Ex. A, at 1, DN 56-2). During his admission physical on October 1, 2014, it was reported that Newell's vital signs were normal but that he experienced joint problems and left knee pain. (Defs.' Mot. Summ. J. Ex. B, at 2, DN 56-3).

On April 25, 2015, Newell complained to Watts of shortness of breath, which Newell had begun experiencing the previous day. (Defs.' Mot. Summ. J. Ex. C, at 1, DN 56-4). Newell also had night sweats and a trace of blood in his sputum. (Defs.' Mot. Summ. J. Ex. C, at 1). His blood pressure was 144/84, and he had a mild fever of 99.7 degrees. (Defs.' Mot. Summ. J. Ex. C, at 1). Newell was prescribed an antibiotic and Ibuprofen 400 mg to address his symptoms. (Defs.' Mot. Summ. J. Ex. C, at 1; Defs.' Mot. Summ. J. Ex. D, at 1, DN 56-5). He also received a breathing treatment with Albuterol. (Defs.' Mot. Summ. J. Ex. D, at 1).

On June 8, 2015, Lasley saw Newell, who complained of pain with breathing for two days and had bloody sputum. (Defs.' Mot. Summ. J. Ex. E, at 1, DN 56-6). Newell rated his pain as 8 on a scale of 10. (Defs.' Mot. Summ. J. Ex. E, at 1). Based on his complaints, an x-ray was ordered. (Defs.' Mot. Summ. J. Ex. E, at 1; Defs.' Mot. Summ. J. Ex. F, at 1, DN 56-7). Newell was also prescribed Ibuprofen 400 mg. (Defs.' Mot. Summ. J. Ex. D, at 1).

On June 9, 2015, Newell complained of more severe constant pain in his chest while inhaling. (Defs.' Mot. Summ. J. Ex. E, at 1). The progress notes from that day indicate that Newell's lungs were "diminished all lobs." (Defs.' Mot. Summ. J. Ex. E, at 1). The radiologist who reviewed the prior day's x-ray film noted "[m]inimal LEFT basilar infiltrate." (Defs.' Mot. Summ. J. Ex. F, at 1). Based on Newell's symptoms and the radiologist's review of the x-ray, Newell was prescribed Bactrim, Robitussin DM, and Tylenol 500 mg. (Defs.' Mot. Summ. J. Ex. D, at 1).

On the morning of June 17, 2015, Newell submitted an inmate medical request noting that he was still coughing up blood, had severe chest pain, and was having shortness of breath. (Defs.' Mot. Summ. J. Ex. G, at 1, DN 56-8). Newell noted that he had been experiencing symptoms for two months but that they "came back about 10 or 11 days ago[.]" (Defs.' Mot. Summ. J. Ex. G, at 1). When Watts saw Newell on June 18, 2015, he had labored breathing and a fever. (Defs.' Mot. Summ. J. Ex. E, at 1; Defs.' Mot. Summ. J. Ex. H, at 1, DN 56-9). Newell also reported bloody sputum and right-side pain. (Defs.' Mot. Summ. J. Ex. H, at 1). He received a breathing treatment with Albuterol and was prescribed Ibuprofen 400 mg. (Defs.' Mot. Summ. J. Ex. H, at 2).

Later that same day, Newell was transported to the emergency room at Medical Center in Bowling Green. (Defs.' Mot. Summ. J. Ex. E, at 1). A CT scan discovered that Newell had a pulmonary embolism without hemodynamic stability. (Defs.' Mot. Summ. J. Ex. E, at 1). Upon release from the Medical Center, Newell returned to the WCRJ. (Compl. ¶ 3).

Newell filed this action alleging a violation of his civil rights under 42 U.S.C. § 1983, and asserting state law claims of negligence and gross negligence. (Compl. ¶¶ 18-24). Following the completion of discovery, Defendants moved for summary judgment and to exclude Newell's expert witness. (Defs.' Mot. Summ. J., DN 56; Defs.' Mot. Exclude Expert Test., DN 57).

## II.     **JURISDICTION**

The Court has subject matter jurisdiction over this matter because Plaintiff's Section 1983 claim presents a federal question. 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's state law claims arising from the same case or controversy pursuant to 28 U.S.C. § 1367(a).

## III. DISCUSSION

### A. Defendant's Motion for Summary Judgment

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

#### 1. *Section 1983 Claim*

As a preliminary matter, Defendants contend that Newell failed to exhaust his remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, and is therefore precluded

from pursuing his Section 1983 claim. (Defs.' Mem. Supp. Mot. Summ. J. 5). As the Court has explained:

> The [PLRA] . . . requires a prisoner to exhaust all available administrative remedies before filing any action "with respect to prison conditions" under 42 U.S.C. § 1983 or any other federal law. That exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Exhaustion is mandatory and the remedies provided "need not meet federal standards, nor must they be 'plain, speedy, or effective.'" "Proper exhaustion demands compliance with [the prison's] deadlines and other critical procedural rules," and so "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."

*Rudolph v. Ballard*, 251 F. Supp. 3d 1184, 1186 (W.D. Ky. 2017) (second alteration in original) (internal citations omitted) (citation omitted). "To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and 'even where [the prisoners] believe the procedure to be ineffectual or futile . . . .'" *Napier v. Laurel Cty.*, 636 F.3d 218, 222 (6th Cir. 2011) (alteration in original) (internal citations omitted) (citation omitted).

Based on the record, an administrative remedy was available to Newell. The WCRJ has a grievance policy under which "[a]ny inmate shall be allowed to file a grievance at such time as the inmate believes he or she has been subjected to abuse, harassment, abridgement of civil rights, or denied privileges specified in the posted rules." (Defs.' Mot. Summ. J. Ex. I, at 1, DN 56-10). In neither the Complaint nor his response to the present motion does Newell address his failure to comply with WCRJ's grievance policy close in time to his treatment. Rather, he attempts to excuse his failure to comply with the PLRA based on events transpiring after he filed this lawsuit—namely, that Defendants failed to raise the exhaustion issue through a timely motion and that he

cannot file a grievance because he is no longer housed at the WCRJ.[1] (Pl.'s Resp. Defs.' Mot. Summ. J. 14-15).

As to the issue of waiver, Defendants did not waive this defense. Defendants specifically pleaded the PLRA as an affirmative defense in their answer. (Answer 6, DN 4). Newell has cited to no Sixth Circuit precedent requiring Defendants to have raised this defense earlier in this litigation. Likewise, Newell's argument that he can no longer exhaust his administrative remedies because he no longer resides at the WCRJ is without merit. "Generally, '[t]he transfer of a prisoner from one facility to another does not render the grievance procedures at the transferor facility "unavailable" for purposes of exhaustion.'" *Napier*, 636 F.3d at 223 (citation omitted); *see also Brown v. Correct Care Integrated Health*, No. 3:09CV-P990-S, 2011 WL 2076404, at *2 (W.D. Ky. May 25, 2011) (dismissing the plaintiff's claims for failure to comply with the PLRA despite the fact that he had been transferred to another facility).

In this case, Newell did not take any steps to pursue a grievance as required by the PLRA, which warrants the dismissal of his Section 1983 claim. Accordingly, the Court will dismiss his Section 1983 claim without prejudice.

---

[1] As noted in *Napier*, "[t]he Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Napier*, 636 F.3d at 223-24 (internal quotation marks omitted) (citation omitted). Even in the absence of any evidence of any effort to comply in the case *sub judice*, the record also reflects that Newell was aware of the WCRJ's grievance policy. During his time at the WCRJ and following the events at issue here, Newell filed several grievances, but he has not identified a specific grievance he filed relating to the medical care provided by Defendants. (Defs.' Mot. Summ. J. Ex. J, at 1-9, DN 56-11). At the time he filed this lawsuit, Newell was still incarcerated at the WCRJ, and more than 10 months had passed since he allegedly received constitutionally deficient medical treatment. (Compl. ¶ 3).

### 2. *State Law Claims*

Dismissing Newell's Section 1983 claims removes the sole federal question from this action. Because the remaining claims involve questions of state law, the Court will decline to exercise its supplemental jurisdiction over Newell's state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014). Plaintiff's remaining state law claims will therefore be dismissed without prejudice.

### B. Defendants' Motion to Exclude Expert Testimony (DN 57)

Defendants have also moved to exclude Newell's expert witness. (Defs.' Mot. Exclude Expert Test., DN 57). Because the Court did not rely on the testimony of the challenged expert witness in dismissing Newell's claims, the Court will deny this motion as moot.

## IV. CONCLUSION

For the forgoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion for Summary Judgment (DN 56) is **GRANTED**. Plaintiff's federal and state claims asserted against Defendants Southern Health Partners, Inc.; Ronald Waldridge, M.D.; Barry Dority, APRN; Lesa Watts; Sabrina Hodge; and Talana Lasley are **DISMISSED WITHOUT PREJUDICE**.

2. Defendants' Motion to Exclude Expert Testimony (DN 57) is **DENIED AS MOOT**.

3. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

cc: counsel of record

July 30, 2019

7